In Re: Appeal of Calvary Fellowship Homes, Inc. from the Lancaster County Board of Assessment Appeals et al. Lancaster County Board of Assessment Appeals, Appellant.

Argued March 7, 1979, before President Judge BOWMAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*Paul K. Allison,* with him *Allison and Pyfer,* for appellant.

*Stephen Kraybill,* with him *Charles B. Grove, Jr.,* and *Blakinger, Grove & Chillas,* for appellee.

OPINION BY JUDGE MACPHAIL, June 21, 1979:

After a careful review of the record and consideration of the briefs and arguments of counsel, we will affirm the order of the Lancaster County Court of Common Pleas on the opinion of Judge ECKMAN entered in Trust Book No. 44 at page 175, in the office of the Prothonotary of Lancaster County as follows:

"Before the Court is an appeal by Calvary Fellowship Homes, Inc. (Calvary) from the decision of the Lancaster County Board of Assessment Appeals denying Calvary tax exempt status for three parcels of land and the improvements thereon. Both parties have accepted the Appellant's Affidavit of Facts by stipulation.

"Calvary is a non-profit corporation originally created to provide housing for adult individuals in need, particularly retired ministers and missionaries who had devoted their lives to serving others in the mis-

sionary and pastoral fields. Over the years, Calvary has expanded its facilities and now takes on as guests members of various religious sects and denominations, offering all of its residents various social and recreational activities.

"The present appeal involves whether cottage type units, which Calvary has built to offer a wider range of residential facilities, should be the subject of a charitable exemption from real estate taxation for County, Township and School tax purposes.

"Prior to 1976 the cottages, together with all other Calvary property were deemed tax exempt. In 1976 the exemption was removed with respect to the cottages, and the total assessed value for the land and improvements of the three parcels in question stands at $136,370.00 for the year 1978. The tax exempt status of the remainder of Calvary's land is not in dispute.

"The cottages are intended to be part of Calvary's overall retirement program but are designed to enable those people who are able to take care of themselves to do so as long as they are able. Prospective cottage residents must fill out the same application form used for other prospective residents which requests information concerning, inter alia, the applicant's physical and mental condition, his religious affiliation, and financial condition. Upon approval, a substantial initial sum, termed a 'founder's fee' is required. The pleadings reveal that this fee ranges from $25,000.00 to $36,000.00, normally representing 80% of the cost of construction of the cottage. Upon termination of the occupancy, either by death or transfer to the 'home facilities,' any future occupant must likewise pay the founder's fee. It has been Calvary's policy to provide an 85% refund of the fee should the occupant leave within ninety (90) days of admission. Once a person becomes a cottage resident, an additional monthly ser-

vice charge of $95.00 is collected which covers such costs as water and sewer service, garbage removal, lawn maintenance, and out-patient nursing care. It also allows for use of all common facilities which Calvary offers to its other residents. In addition, should the occupant become unable to pay the service charge, the occupant may remain in the cottage on a non-paying basis, and still enjoy all of the advantages of any other resident. The occupant may be transferred from the cottage to the 'home facilities' only for medical reasons, or at his or her request.

"The Pennsylvania Constitution in Article 8, §2 permits the General Assembly to exempt from taxation by law

(v). Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institutions which are actually and regularly used for the purposes of the institution.

The General County Assessment Law, Act of June 11, 1968, P.L. 157, No. 86, Sec. 1, as amended, 72 P.S. 5020-204, enacted pursuant to this constitutional grant of power, provides:

(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit . . .

(3) All . . . institutions of . . . benevolence, or charity . . . with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity; Provided, That the entire revenue derived by the same be applied to the support . . . thereof, . . . .

(9) All real property owned by one or more institutions of purely public charity, used and occupied partly by some owner or owners and partly by other institutions of purely public

charity, and necessary for the occupancy and enjoyment of such institutions so using it;

(b) Except as otherwise provided in clause (11) of this section, all property real or personal, other than that which is actually and regularly used and occupied for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation, except where exempted by law for State purposes, and nothing herein contained shall exempt same therefrom.

"On two recent occasions, this Court has addressed fact situations very similar to the present one and found that such cottages are sufficiently devoted to the charitable purposes of the main institution as to meet the requirements set forth above. See In Re Appeal of Brethren Village, Lanc. C.P., Trust Book No. 43, Page 470 and In Re Appeal of Moravian Manors, Inc. et al., Lanc. C.P., Trust Book No. 44, Page 98. Both opinions contained a careful analysis of the two major appellate cases concerning the present issue.

"We find persuasive the rationale set forth in those two cases and find that in this case Calvary should also be entitled to a charitable tax exemption for its cottages.

"In Lutheran Home at Topton, Pennsylvania Tax Appeal, 6 Pa. Cmwlth. 199 (1972), a charitable tax exemption was denied a cottage plan where unlike the present case, it was incumbent on the applicant to show as a condition of admission that he would not need future financial assistance. In that case, the court noted that the Home was not obliged to admit the cottage resident to its other facilities in the vent of physical or financial disability to continue independent living. Though Calvary may look at an applicant's fi-

nancial situation as a factor in deciding whether to approve his application, it does not demand a showing of future financial independence. As stated in Paragraph 15 of the Affidavit, it is apparent that Calvary's policy is to take care of its cottage occupants for the remainder of their lives, regardless of whether they have sufficient funds to pay the monthly service charge. This would include providing needed skilled nursing care free of charge, if necessary.

"The elements of the present case place it more clearly within the holding in Lutheran Social Services, Adams County v. Adams County Board for Assessment and Revision of Taxes, 26 Pa. Cmwlth. 580 (1976). There, the court allowed an exemption for cottages similar to those here citing as the 'critical' distinguishing factor from Topton, the willingness of the Home to subsidize its residents once they become impoverished.

"The Assessment Board points out that the founder's fee in the present case is related to the size of the cottage rather than the number of occupants. This was a factor the court in Topton considered in denying an exemption, and was an element not present in the Lutheran Social Services case. We believe that though this may be a relevant factor, it was not the primary basis of the Commonwealth Court's holding in the latter case, and that we would be in error if we allowed this factor to persuade us to deny an exemption. This is especially true here, where, in addition to providing care and services for residents after they exhaust their resources, Calvary has also had a policy of allowing an 85% refund of the founder's fee for those staying less than ninety days. No such policy existed in Topton. Additionally, the admission fee in Topton was not merely related to but equaled the cost of the residence provided. The fee here is equal to about 80% of the cost of construction and is fixed with other factors in

mind such as the operational deficit of the nursing facilities whose existence relies in part on funds derived from the founder's fees.

"The Court finds that Calvary is entitled to a charitable tax exemption pursuant to The General County Assessment Law, 72 P.S. §5020-204, supra, and accordingly enters judgment in favor of Appellant, Calvary Fellowship Homes, Inc."

ORDER

AND Now, this 21st day of June, 1979, the order of the Lancaster County Court of Common Pleas dated June 5, 1978, entering judgment for Calvary Fellowship Homes, Inc. is affirmed.