In Re: Appeal of the Eastern District Conference of the General Conference Mennonite Church etc. Eastern District Conference of the General Conference Mennonite Church, Frederick Mennonite Home, Frederick, Pennsylvania, Appellant.

In Re: Appeal of the Eastern District Conference of the General Conference Mennonite Church etc. Eastern District Conference of the General Conference Mennonite Church, Frederick Mennonite Home, Frederick, Pennsylvania, Appellant.

Argued December 16, 1982, before Judges BLATT, CRAIG and DOYLE, sitting as a panel of three.

*Richard A. Rosenberger, Souder, Rosenberger, Lapp & Bricker,* for appellant.

*Mark Ryan,* with him *Michael D. Marino,* for appellee, Montgomery County Board of Assessment Appeals.

*David L. Allebach, Jr., Reynier, Crocker, Allebach & Reber, P.C.,* for appellee, Township of Upper Frederick.

OPINION BY JUDGE BLATT, February 15, 1983:

In these consolidated cases, the Eastern District Conference of the General Conference Mennonite Church (appellant) appeals here an order of the Court of Common Pleas of Montgomery County which dismissed its tax exemption appeal.

The appellant, a non-profit corporation, is the owner of the Frederick Mennonite Home. Among the buildings making up the Home are three cottages, each containing four individual living units designed for the elderly, and it is the status of these cottages which is the subject of dispute. To live in one of these units, the resident must enter into an agreement with the appellant relating to the monetary arrangements, and there are several arrangements available, depending upon whether the resident pays a higher founder's fee initially and a lower monthly charge or a lower founder's fee initially and a higher monthly charge.[1] The monthly charges are in addition to a monthly maintenance fee of $175 assessed by the appellant to cover costs for heating, water, sewerage, insurance,

---

[1] The founder's fees ranged from $17,000 to $34,000 in 1978 and $21,000 to $38,000 in 1979. Of this amount, $5,000 is placed in a reserve to be refunded upon the resident's leaving of the cottage, or being admitted to the hospital in the main building. The monthly charges range from $125 to $175.

and the like. The residents pay their own electric and telephone bills and for meals and medical services available at the Home.

The agreement provides that, if the resident is financially unable to continue the monthly payments, the appellant will not terminate the agreement, and, because of this clause the appellant argues that the charitable purpose of the Home is clearly shown. The agreement also provides that the appellant reserves the right to terminate the agreement "for any cause which, in the judgment of the Home, shall be good and sufficient," and the common pleas court found that the initial financial requirements include a showing of sufficient ability to pay the initial founder's fee and the monthly charges. The administrator testified that no one had ever been discharged from the Home, but he also testified that no one had ever become financially unable to meet the monthly costs. In fact, the administrator could not give the common pleas court the name of any individual who had been allowed to stay without payment of the fees. Moreover, every resident has been required to submit a physician's certificate stating that he or she is physically and mentally capable of living independently, and satisfactory results must be obtained on laboratory blood, urine, Wasserman, and chest x-ray tests.

The right to a tax exemption in this Commonwealth is governed first by our Constitution and then by our general laws. Pa. Const. art. VIII, §2, provides in pertinent part that:

> (a) The General Assembly may by law exempt from taxation:
>
> ....
>
> (v) Institutions of *purely public charity*, but in the case of any real property tax exemptions only that portion of real property of such institution which is *actually and regularly used*

for the purposes of the institution. (Emphasis added.)

Pursuant to the Constitution, the General Assembly enacted Section 204(a)(3) of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §5020-204(a)(3) which provides in pertinent part that:

(a) The following property shall be exempt from all county, borough, town, township, road, poor, and school tax, to wit:

....

(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose.

The question as to whether or not the appellant here is entitled to the exemption claimed is a mixed question of law and fact. *Presbyterian-University of Pennsylvania Medical Center v. Board of Revision of Taxes*, 24 Pa. Commonwealth Ct. 461, 357 A.2d 696 (1976). And the burden of proving that a party falls within the ambit of the statute and is entitled to the exemption clearly lies with the charity. *Id.* Moreover, statutory provisions regarding exempting property from taxation are subject to a strict construction. *Four Freedoms House of Philadelphia, Inc. v. Philadelphia*, 443 Pa. 215, 279 A.2d 155 (1971). And to permit an exemption, case law provides for a three-pronged test

to be met. As set forth in *Woods School Tax Exemption Case*, 406 Pa. 579, 584, 178 A.2d 600, 602 (1962):

> [T]o obtain the claimed exemption from taxation, [appellant] must affirmatively show that the entire institution, (1) is one of "purely public charity;" (2) was *founded* by public or private charity; (3) is *maintained* by public or private charity. (Emphasis added.)

The appellant, in attempting to prove its right to exemption has cited to us several prior Commonwealth Court decisions which seem to support its position. *Lutheran Social Services Tax Exemption Case*, 26 Pa. Commonwealth Ct. 580, 364 A.2d 982 (1976) upheld a tax exemption for retirement cottages on the campus of a Home for the Aged even while noting that all the residents were required to supply financial statements and to pay substantial admission fees. Following *Lutheran Homes*, this Court upheld exemptions for retirement cottages in *Appeal of Calvary Fellowship Homes, Inc.*, 43 Pa. Commonwealth Ct. 485, 403 A.2d 150 (1979) and for a retirement village in *Marple Newtown School District Appeal*, 46 Pa. Commonwealth Ct. 80, 405 A.2d 1351 (1979).

These cases, however, can no longer be said to be the law, for our decision in *Marple Newtown* has recently been reversed by the Supreme Court, *Appeal of Marple Newtown School District* (No. 465 January Term, 1979, filed December 23, 1982). We believe, therefore, that *Lutheran Homes* and its progeny have been overruled *sub silencio*.

The Supreme Court in *Marple Newtown* rejected the argument of the Dunwoody Village that its retirement community was a purely public charity as that phrase is used in our law. Similar to the Home here concerned, the Dunwoody Village. was composed of apartments which are close to a medical facility. Each resident there paid an "entry fee," a term we believe is

indistinguishable from "founder's fee."[2] These residents also paid monthly charges, as do the residents in the appellant's apartments. The Supreme Court noted that the Dunwoody residents had to be in good health and "must demonstrate an ability to afford the substantial entrance fees and monthly charges," Slip op. at 3, and, "[i]f the applicant fails to meet this prerequisite, the applicant will not be further considered." *Id.* at 5. The Dunwoody residents were also required to enter into a formal agreement which gave the Village the right to require a resident to leave if unable to pay, and although the Court noted that the Village had an option under which it could subsidize an individual in financial straits, it said that "[s]ubsidization of a resident's required charges by the Village is a remote possibility at best, as indicated by the fact that only one resident of the Village has been subsidized since the Village has been in operation." *Id.* In the case at bar, where a similar situation existed, no resident at all has as yet received any subsidy. We believe, therefore, that the facts of this case place it squarely within the ambit of *Marple Newtown.*

We do not mean by this opinion to intimate any disapproval of the appellant's operation of the cottages, but we must hold that it is not a purely public charity, *founded and maintained by charity.* It follows, therefore, that the appellant must carry its share of the tax burden, as would any commercial enterprise.

We will affirm the order of the trial court.

### Order

And Now, this 15th day of February, 1983, the orders of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.

---

[2] In 1975 the range was $18,000 to $53,500. In 1976 the range was $22,000 to $59,000.