Passavant Health Center *v.* The Board of Assessment and Revision of Taxes of Butler County and Southwest Butler County School District and Zelienople Borough. Southwest Butler County School District, Appellant.

Passavant Health Center *v.* The Board of Assessment and Revision of Taxes of Butler County and Southwest Butler County School District and Zelienople Borough. The Board of Assessment and Revision of Taxes of Butler County, Appellant.

Argued October 10, 1985, before Judges MacPhail and Doyle, and Senior Judge Barbieri, sitting as a panel of three.

*George H. Hancher,* for appellant.

*Richard L. McCandless, Dillon, McCandless & King,* for appellee, The Board of Assessment and Re-

vision of Taxes of Butler County and Southwest Butler County School District.

OPINION BY JUDGE MACPHAIL, December 19, 1985:

The Board of Assessment and Revision of Taxes of Butler County (Board) appeals here from a decision of the Court of Common Pleas of Butler County (County) which sustained the tax exemption claim of Passavant Health Center (Passavant). We reverse.

Passavant is a non-profit corporation which, prior to 1978, consisted of a nursing home and a number of small cottages. The nursing home itself contains apartments and nursing facilities. Also on the Passavant grounds are two apartment buildings: Wittenburg, a five story apartment building, and Luther Court, a federally funded low-income apartment building owned by a separate corporation and managed by Passavant.

Nineteen additional cottages were constructed on Passavant grounds between 1978 and 1982.[1] On July 8, 1983, the County assessed these cottages at a value of $534,090. Passavant appealed this assessment to the Board which denied the appeal. Passavant then appealed to the trial court, which, after a hearing, sustained Passavant's appeal and held that these nineteen cottages were tax exempt. The instant appeal followed.

Passavant claims exemption pursuant to Article VIII, Section 2 of the Constitution of the Commonwealth of Pennsylvania[2] and Section 204(a).(3) of The

---

[1] These nineteen cottages house ninety-five (95) occupants. N.T. at 34.

[2] The Constitution provides that "[t]he General Assembly may by law exempt from taxation:

. . . .

Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real prop-

General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §5020-204(a)(3), which provides:

> (a) The following property shall be exempt from all county, borough, town, township, road, poor, and school tax, to wit:
>
> . . . .
>
> (3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increases of grounds and buildings thereof, and for no other purpose.

Whether Passavant is entitled to an exemption is a mixed question of law and fact. *Hill School Tax Exemption Case*, 370 Pa. 21, 87 A.2d 259 (1952); *General Conference Mennonite Appeal*, 72 Pa. Commonwealth Ct. 96, 455 A.2d 1274 (1983). Passavant has the burden of bringing itself within the ambit of the exemption. *Presbyterian-University of Pennsylvania Medical Center v. Board of Revision of Taxes*, 24 Pa. Commonwealth Ct. 461, 357 A.2d 696 (1976). Whether Passavant is exempt from federal income taxation is not a relevant consideration. *Pittsburgh Institute of Aeronautics Tax Exemption Case*, 435 Pa. 618, 258 A.2d 850 (1969).

---

erty of such institution which is actually and regularly used for the purpose of the institution.

In order to obtain the tax exemption, Passavant must affirmatively show that the retirement cottages, "(1) [are] one of 'purely public charity'; (2) [were] founded by public or private charity; (3) [are] maintained by public or private charity." *Appeal of Episcopal Community Services of the Diocese of Pennsylvania*, 90 Pa. Commonwealth Ct. 409, 415, 495 A.2d 653, 656 (1985), quoting *Woods School Tax Exemption Case*, 406 Pa. 579, 584, 178 A.2d 600, 602 (1962). The decision of the trial court sustaining Passavant's entitlement to an exemption as a purely public charity will be affirmed unless we find abuse of discretion or lack of supporting evidence. *Appeal of Bucks County Board of Assessment Appeal*, 55 Pa. Commonwealth Ct. 195, 423 A.2d 760 (1980).

Inasmuch as our Supreme Court has cautioned that prior cases have limited value in this area of the law, *Presbyterian Homes Tax Exemption Case*, 428 Pa. 145, 236 A.2d 776 (1968), we must carefully analyze the pertinent facts present in the record before us.

Applicants for admission to Passavant can apply to either the Independent Living Plan I and Plan II (retirement cottages) or to the nursing unit. Applicants to either plan must be at least 65 years of age and submit a complete financial statement and a medical certification from the applicant's own physician certifying the condition of the applicant's physical and mental health. No one may be denied admission because of race, color, creed or national origin.

It is Passavant's policy to "use any money or real or personal property, received from the resident admitted to [Passavant], or after such admission, for no other purpose than the maintenance, operation, improvement, and/or endowment of [Passavant] for the care of aged members of the Lutheran Church and others needing such care." General Condition No. 8

of the Policies and Rules of the Passavant Retirement and Health Center (Policies).

Applicants to the nursing unit fill out a financial application which states that "[t]he purpose of this application is to ascertain that you have the assets and income to meet the cost of and to maintain the patient in a nursing bed for at least eighteen (18) months." The Policies also provide three payment plans by which a person may enter the nursing unit.[3]

On the other hand, applicants to the retirement cottages must complete a different financial form which

---

[3] The three payment plans are:

A. Private Pay Plan

The patient's family, or other administrator can administer the patient's assets and pay monthly all costs of care. It is the family's responsibility to keep an accurate accounting of records to satisfy the government if and when it is necessary for the person to apply for Medical Assistance.

B. The Future Care Trust Fund of Passavant Health Center can administer and pay all costs of care; remaining assets become the property of Passavant Health Center. Whatever assets the applicant has must be brought to the Center the day of admission. This includes insurance policies, deeds to property, savings and checking accounts, stocks, bonds, etc. The Accounting Department establishes a personal account of each person's assets in his name in the Future Care Trust Fund. Should assets of resident/patient be depleted by the charges of services, the applicant is then expected to apply for Medical Assistance if eligible or contact the Center's Social Service Department.

C. Third Party Payor—Medicare, Medicaid, Insurance, etc. Passavant Health Center will accept payments from Third Parties, i.e. Blue Cross, Medicare, Medicaid, where a valid claim exists. In the event of a dispute in the eligibility of the patient by the Third Party the patient or patient's family is responsible for payment of all charges from Passavant Health Center, said payments to be made to maintain the account on a current basis. If, and when, subsequent approvals and payments are made by the Third Party all applicable payments from patient sources will be refunded. Condition No. 10, subsection "Nursing" of the Policies.

provides that "[e]ach resident who is admitted to the retirement living program must give evidence of his ability to pay for his cost of living in [Passavant] and possible future medical/nursing care." In addition, applicants to the retirement cottages sign a contract. This contract provides, in pertinent part:

> WHEREAS, applicant(s) has shown a satisfactory record and proof of his health . . . and occupant has submitted evidence of his/her financial ability to enter [Passavant's] Independent Residential Living Program. . . .
>
> . . . .
>
> 4. [Passavant] agrees that Occupant shall have the absolute right to occupy said Cottage/Apartment and may remain therein for and during the period of his or her natural life or until such time as Occupant requires such medical and nursing care as would necessitate entrance into [Passavant's] nursing unit or some other medical or nursing facility.
>
> . . . .
>
> 10. Occupant shall be financially responsible to pay the cost of all utilities and for any services purchased from [Passavant]. Included in utilities are, where applicable: gas, electric, water, sewage, and garbage removal, and any real estate taxes if ever assessed upon the unit.
>
> 11. A monthly Service Fee as determined by [Passavant's] Board of Directors shall be due and payable in advance on the first day of each month. This Service Fee covers [Passavant's] cost of providing the following services: snow removal, lawn care, specific maintenance

items, transportation (within [Passavant] property), fire service, and twenty-four hour security protection. It also covers the cost of general administration, social services, clinic operation, chaplaincy and recreational services that are available to all residents.

The following services are available to residents on a fee for service basis: telephone service, dietary, laundry, housekeeping, special maintenance items, special transportation and nursing.

. . . .

13. Occupant is responsible for any expenses where hospital confinement is required or where specialists, nurses, special equipment, drugs, food, service, etc., are required.

. . . .

15. If nursing care is required by any of the Occupants in [Passavant's] nursing unit the cost will be at the then prevailing rate.

. . . .

17. Should Occupant become physically or mentally unable to continue Cottage/Apartment residence, Occupant shall become eligible immediately for admission to nursing care unit as space is available at the nursing unit. The decision as to this eligibility shall be the joint decision of the Administrator, Director of Nursing, the Occupant's physician and the Occupant or the Occupant's family representative.

18. [Passavant] gives to the Occupant(s), upon approval of [Passavant], the right to enter [Passavant's] nursing unit, if bed and fa-

cilities are available, without regard to the occupant's ability or inability to pay for said nursing care, provided the request was made by either the occupant or the occupant's family representative and was approved by [Passavant's] medical staff.

We note that the Policies provide the following:

19. The Board of Directors of Passavant . . . wish to reaffirm its practice of the past seventy-seven years of charitable service as a non-profit corporation. No occupant of an apartment or cottage will be requested to vacate their living quarters because of possible financial inability to pay the monthly costs as defined in their contract.

20. [Passavant] also grants the opportunity to any occupant of an apartment or cottage, upon approval of [Passavant], the right to enter [Passavant's] nursing unit, if bed and facilities are available, without regard to the occupant's ability or inability to pay for said nursing care, provided the request was made by either the occupant or the occupant's family representative and was approved by [Passavant's] medical staff and administrator.

Our focus is upon whether these nineteen retirement cottages are maintained by public or private charity. It is the Board's position that in light of the entrance fee[4] and monthly charges,[5] the retirement cot-

---

[4] The lump sum entrance fee for the cottages is from $22,000-$55,000, depending upon the size of the cottage. N.T. at 25. The lump sum payment is then pooled into a fund which covers mortgage and interest costs, depreciation, and part of the costs of the whole center. N.T. at 26.

[5] The monthly service fee is $85 per month. N.T. at 20.

tages are not maintained by public and private charity.[6]

Although the trial court found that there were factors present in this case which were present in cases where the exemption was denied, the court held that the "mixture of the evidence" still supports the exemption. We are constrained to disagree. In the instant case, there is no financial aid package available to the applicants applying for residence at one of the nineteen retirement cottages: applicant *must* demonstrate financial ability in order to be considered. *Compare Appeal of Episcopal Community Services of the Diocese of Pennsylvania* (no application denied solely on account of lack of finances).[7] In addition, of the ninety-five cottage residents, only three or four are receiving a subsidy on the monthly rent charges[8] (N.T. at 19, 65), and only one person receives a subsidy on the payment of utilities, bills, and service fees. (N.T. at 51, 69-70). As previously noted, cottage residents must pay for many of the services provided to the residents of the nursing unit.[9] The automatic eligibility of

[6] We note that the Board is *not* arguing that Passavant's *entire* facilities are no longer entitled to tax exempt status; the Board is simply arguing that these nineteen cottages are a portion of real property *not* used for a charitable purpose.

[7] There is a separate corporation on Passavant grounds which accepts applicants with insufficient funds—Luther Court. Exceptions to the financial requirement have been made when Luther Court is unable to accept an individual, that individual has been permitted to stay on in a cottage.

[8] The record reveals that Passavant will adjust the rent on a month to month basis if the resident can no longer afford the monthly fee. N.T. at 19. Passavant presently has three or four individuals paying an adjusted monthly fee.

[9] The per unit annual cost for the services that are provided to the independent living residents was $1417 for the year ending June 30, 1982, with each apartment contributing $156; for the year ending June 30, 1983, the total cost per unit was $1545, with each

cottage residents to enter the nursing unit regardless of finances evidences a charitable purpose on the part of the nursing unit and not on the cottages themselves. In *Appeal of Marple Newtown School District,* 500 Pa. 160, 455 A.2d 98 (1982), our Supreme Court held that a retirement village has no charitable purposes where financial security is a prerequisite to the admission of all residents and where there was no realistic prospect of a resident receiving a subsidy of the required charges.

In our view, these nineteen cottages represent a "private housing facility which for all practical purposes offers its residents no services beyond those which the residents demonstrate an ability to afford." *Appeal of Marple Newtown School District,* 500 Pa. at 166, 455 A.2d at 100. We conclude that the record does not support the trial court's conclusion that these nineteen retirement cottages are a purely public charity entitled to exemption from taxation.

Accordingly, we reverse the order of the Court of Common Pleas of Butler County.

ORDER

The order of the Court of Common Pleas of Butler County, dated September 26, 1984, at Ms. D. No. 84-034, Book 43, Page 284, is reversed.

---

apartment contributing $600. N.T. at 42-43. In 1984, the service costs were $1630, with each apartment contributing $900.

In 1983, Passavant provided $862,000 of "free" service; $400,000 in charitable donations paid for part of these services. The remainder was covered by what Passavant generated out of the "lump sum fund". N.T. at 44. The record reveals that the independent living program "is a money maker for the whole program." N.T. at 54.