## Appeal of United Church of Christ Homes

*Thomas A. Behney,* for United Church of Christ Homes.

*Rosamond A. Presby,* for Board of Assessment Appeals.

GATES, *P.J.*, May 26, 1988— The United Church of Christ Homes appeals the determination of the Lebanon County Board of Assessment Appeals denying tax-exempt status to a portion of the Lebanon Valley Home in Annville, Lebanon County. A hearing was held on May 10, 1988.

The facts are not in dispute: UCCH, a non-profit corporation, is the owner of the Lebanon Valley Home. Among the buildings making up the Home are six duplex cottages, each containing two individual living units designed for the elderly. The taxable status of these 12 units is the subject of this dispute.

The Lebanon Valley Home is one of the several homes for the aged owned and operated by the UCCH. The Home is composed of two major facilities: a nursing home/partial care residential facility and 12 cottages at issue. The UCCH is a non-profit corporation with the stated purpose of providing and maintaining homes and other facilities for the aged.

Application for admission into the UCCH facilities, including the Home, is accomplished by completing a printed form which requires financial information to be provided by each applicant. No minimum income requirement is specified on the form. No application fee is charged.

In order to qualify for admission to the cottages, an applicant must be at least 60 years of age and in good health. Applicants are choosen for admission to the Home based on their "total needs," i.e. spiritual, physical, psychological and financial needs. An entry fee (currently $44,500) is required to be paid prior to admission into a cottage. In addition, a monthly fee (currently $102) is charged for services such as sewer, water, snow removal and yard care. Cottage residents must pay for their own food, clothes, utilities, transportation and medical treatment.

Residents of the cottages are not guaranteed placement in the nursing facility (if that need should arise);[*] however, to date the four cottage residents requiring nursing care were able to be

---

[*] The attorney for the UCCH, in the memorandum of law submitted to this court, states as a fact that cottage residents are guaranteed placement in the temporary and residential nursing care facilities operated by the Home. This statement of fact is not supported by the testimony and evidence. The "Cottage Policies and Agreement" document states simply that "[w]hen necessary, the cottage residents *shall be eligible* for temporary nursing care..." No guarantees are provided.

accommodated at the Home's nursing facility. Any cottage resident who is placed in the Home's nursing facility is required to pay the established daily rate for services rendered.

The $44,500 entry fee is non-refundable after five years. During the first four years, the fee is refundable at a sliding scale discount. The fee is depreciated at five percent per year, with any remaining equity credited at five percent a year towards the cost of nursing care at the Home. If nursing care is received outside the Home, no money is refunded. Upon death of a resident, *at any time,* the entry fee is totally forfeited to the Home.

Testimony at the hearing indicates that every cottage resident has paid the required entry fee and monthly charges in full; no discount or subsidy has ever been provided by the UCCH to a cottage resident. A "benevolent fund" sponsored by the UCCH is used to subsidize residents of the nursing facility; in theory, this fund could be available to cottage residents if necessary.

Financial statements filed by the UCCH indicate the cottages operate at a loss; however, we question this fact. The documents indicate that the cottages are depreciated for accounting purposes. Testimony at the hearing established that the entry fee paid by new residents is equal to the amount it would cost the UCCH to construct a new cottage.

The UCCH claims these properties and improvements qualify for tax-exempt status pursuant to statute, 72 Pa. §5453.202(3). Lebanon County contends these properties are not purely public charities, and may therefore be taxed.

Whether the UCCH is entitled to an exemption is a mixed question of law and fact, and the UCCH bears the heavy burden of bringing itself within the ambit of the exemption. *Appeal of Lutheran Home*

*at Topton,* 100 Pa. Commw. 244, 515 A.2d 59 (1986), allocatur denied, 527 A.2d 548 (1987). Statutory provisions regarding exempting property from taxation are subject to strict construction. *In re Eastern District Conference,* 72 Pa. Commw. 96, 455 A.2d 1274 (1983). The courts must be ever mindful that "when the tax burden is lifted from the shoulders of one, it must be redistributed among those who remain non-exempt." *Wyoming Valley Montessori Inc. v. Board of Assessment Appeals of Luzerne County,* 110 Pa. Commw. 458, 464, 532 A.2d 931, 934 (1987), citing *Homewood-Brushton Citizens Renewal Council v. City of Pittsburgh,* 27 Pa. Commw. 630, 633, 367 A.2d 405, 407 (1976).

Section 5453.202, Exemptions from taxation, under which the UCCH claims exemption provides:

"(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:

. . .

"(3) *All* hospitals, universities, colleges, seminaries, academies, associations and *institutions of* learning, *benevolence or charity,* including fire and rescue stations, *with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: Provided further, that the property of associations and institutions of benevolence or charity be necessary to and actually used for the principal purposes of the institution and shall not*

*be used in such a manner as to compete with commercial enterprises. . . ."* 72 P.S. §5453.202(C). (emphasis supplied)

To sustain its claim for real estate tax exemption for the Home, UCCH must affirmatively show that the Home "(1) is one of 'purely public charity'; (2) was founded by public or private charity; and (3) is maintained by public or private charity." *Appeal of Lutheran Home at Topton, supra.*

The Pennsylvania Supreme Court has recently determined that for an entity to qualify as a "purely public charity," it must possess the following characteristics:

"(a) advances a charitable purpose;

"(b) donates or renders gratuitously a substantial portion of its services;

"(c) benefits a substantial and indefinite class of persons who are legitimate subject of charity;

"(d) relieves the government of some of its burden; and

"(e) operates entirely free from private profit motive." *Hospital Utilization Project v. Commonwealth,* 407 Pa. 1, 22, 487 A.2d 1306, 1317 (1985).

Although our Supreme Court has cautioned that prior cases have limited value as precedent in this area of the law, *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968), we must, nevertheless, look to case law for guidance realizing that the factual background of each case is of considerable importance.

In *Appeal of Marple Newtown School District,* 500 Pa. 160, 455 A.2d 98 (1982) the Supreme Court rejected the argument that Dunwoody Village (a retirement community) was a purely public charity, holding:

"[T]he record is clear that financial security is a prerequisite to the admission of *all* residents of the

Dunwoody Village. If an applicant fails to meet this prerequisite the applicant will not be further considered. *Subsidization of a resident's required charges by the Village is a remote possibility, at best, as indicated by the fact that only one resident of the Village has been subsidized since the Village has been in operation.* Even when the possibility of a need for subsidization arises, the decision to subsidize is wholly within the discretion of the Village, whose other options include the termination of the care agreement. Thus, on this record, it cannot be concluded that the charitable purpose found in *Presbyterian Homes* is shared by Dunwoody Village, a private housing facility which for all practical purposes offers its residents no services beyond those which the residents demonstrate an ability to afford." 500 Pa. at 165, 455 A.2d at 100. (emphasis supplied)

The rationale espoused by the Supreme Court in the *Marple Newtown* decision was followed by the Commonwealth Court in *Appeal of Eastern District Conference, Frederick Mennonite Home,* 72 Pa. Commw. 96, 455 A.2d 1274 (1983).

In the *Frederick Mennonite Home* case the court determined that the Mennonite Home, like Dunwoody Village in *Marple Newtown,* had only a remote possibility of subsidization of a resident's charges. Given this fact, the court held the Home not to be a purely public charity.

The criteria for determining a "purely public charity" expressed by the Supreme Court in the *Hospital Utilization Project* case was applied by the Commonwealth Court in *Appeal of Lutheran Home at Topton, supra.* The *Topton* case involved Luther Crest Home, a home for the elderly in Lehigh County. The Commonwealth Court determined that

no realistic possibility of a subsidy existed, and the criteria of the *Hospital Utilization Project* case had not been met:

"Although Luther Crest has not realized a profit, and operates free from private profit motive, *Hospital Utilization Project,* these factors alone do not warrant the conclusion that Luther Crest is being put to a public charitable use . . . Luther Crest does not donate or render gratuitously any of its services: all of its residents pay fees approximating actual costs. Luther Crest is not relieving the government of some of its 'burden' in providing services to paying customers, so to speak . . .

"Referring once again to the characteristics our Supreme Court requires an entity to have in order to qualify as a purely public charity, we conclude that the record in the instant case is insufficient to show that Luther Crest advances a charitable purpose, donates or renders gratuitously a *substantial* portion of its services, benefits a substantial and indefinite class of person *who are legitimate subject of charity* or relieves the government of some of its burden. Luther Crest, therefore, is not entitled to exemption from taxation." 100 Pa. Commw. at 262-3, 515 A.2d at 68. (citations omitted)

With these principles in mind, we will examine the testimony and evidence of this case. To qualify for tax-exempt status the UCCH is required to prove that the cottages qualify as a purely public charity. Following the criteria established by statute, 72 P.S. §5453.202(3), and by the Supreme Court in the *Marple Newtown* and *Hospital Utilization Project* cases, we do not find that the burden of proof has been met.

It is axiomatic that the elderly are a legitimate subject of charity, *Lutheran Home at Topton, supra;* but that alone does not establish this facility as

a charitable operation. No gratuitous services are rendered to cottage residents; in fact, these residents are apparently financially secure as evidenced by the substantial fees paid to the UCCH. They are not in need of charity, and no charity is provided: These residents pay full price for the value they receive.

Although the UCCH may operate as a non-profit organization, and argues that it operates the Home at a loss, these factors do not warrant the conclusion that the cottages are being put to a public charitable use. *Lutheran Home of Topton, supra.* Case law indicates that the determining factor applied by the appellate courts in these cases is whether there is a realistic prospect of a resident receiving a financial subsidy. See, e.g., *Appeal of Episcopal Community Service of the Diocese of Pennsylvania,* 90 Pa. Commw. 409, 495 A.2d 653 (1985); *Appeal of Marple Newtown School District, supra.* Subsidization in this case, as in the *Marple Newtown* case, is a remote possibility at best, as indicated by the fact that no cottage resident has ever been subsidized. On this record, it appears this operation is a private housing facility which for all practical purposes offers its cottage residents no services beyond those which the residents demonstrate an ability to afford.

Following the criteria of the *Hospital Utilization Project* case, we find that the cottage facilities of the Home do not donate or render gratuitously a substantial portion of its services, nor do the cottages benefit a class of persons who are the subject of charity. Thus, the government is clearly not relieved of some of its burden; these residents are financially solvent and pose no burden. Although the UCCH may advance a charitable purpose and operate free of private profit motive, these cottages and their residents are not the subject of this charity.

Thus, we must affirm the determination of the Board of Assessment Appeals and find these cottages ineligible for tax-exempt status.

## ORDER

And now, May 26, 1988, after a hearing and consideration of the testimony, the evidence and the memoranda of law submitted by counsel, the determination of the Lebanon County Board of Assessment Appeals is affirmed. The land and improvments in question owned by the United Church of Christ Homes are determined to be ineligible for tax-exempt status as an institution of benevolence and charity, 72 P.S. §5453.202(3).