Council Rock School District, Appellant *v.* G. D. L. Plaza Corporation, Appellee.

Argued June 3, 1985, before Judges Craig and Mac-Phail, and Senior Judge Kalish, sitting as a panel of three.

*John A. Vanluvanee,* with him, *Derek J. Reid* and *John N. Schaeffer, Eastburn and Gray,* for appellant.

*William M. Adshead,* with him, *Alfred J. Tagliaferri, Peck, Young & Van Sant,* for appellee.

Opinion by Judge MacPhail, August 16, 1985:

The Council Rock School District (School District) appeals from the decision of the Court of Common Pleas of Bucks County which held that the G. D. L.

Plaza Corporation (GDL) was a "purely public charity" entitled to a tax exemption. We reverse.

On May 5, 1980, the School District adopted a residential construction tax resolution.[1] The resolution authorized the School District to collect a residential construction tax on all new construction taking place within the district at the rate of $875.00 for each residential unit.[2] GDL is a non-profit corporation which had planned to build[3] a housing complex for elderly and handicapped persons. GDL was taxed in the amount $97,125. GDL paid the tax "under protest", and then brought an action in equity to recover the monies paid, asserting that the GDL project was an institution of "purely public charity" and qualified for an exemption.[4]

After a hearing, the trial court sustained GDL's appeal and held that GDL was a purely public charity entitled to tax exemption status. The instant appeal followed.

---

[1] The "Council Rock School District Resolution" was adopted pursuant to the Local Tax Enabling Act (Act), Act of December 31, 1965, *as amended*, 53 P.S. §§6901-6924.

[2] The 1981 Amendment to the Act provided that "any school district which has on or before June 30, 1981, levied, assessed or collected a tax which would otherwise be prohibited by [clause (11) of this section] may continue to levy, assess and collect, but not increase, the amount of tax until June 30, 1982. . . ." Section 2 of the Act of July 1, 1891, P.L. 184. Clause 11 of Section 1 of the Act, 53 P.S. §6902(11) prohibits the levying, assessment, or collection of tax on the construction of residential dwellings or upon the application for a permit to construct residential dwellings.

[3] The complex has since been constructed and is now operated by GDL.

[4] Since September of 1980, GDL has been the legal owner of the property on which the complex was built. On November 11, 1981, the County of Bucks Board of Assessment Appeals (Board) recorded its denial of GDL's request for tax exemption status. The property was placed into tax exemption status by the Board on February 1, 1982, effective January, 1982 for the 1983 assessment.

GDL is a non-profit corporation which built and now operates a housing complex for elderly and handicapped persons. The project was constructed in conformity with the provisions of Section 202 of the National Housing Act, 12 U.S.C. §1701q. Seed money for the project, in the amount of $54,857.52, came from the G. D. L. Manor Corporation.[5] The project has one hundred and eleven (111) rental units contained in a single building, one hundred and ten (110) of which are rented by persons whose annual incomes average $18,000 . . . (for an individual) to $21,400 (for a couple).[6] Residents must be at least sixty-two (62) years of age and retired or handicapped or otherwise eligible to receive Social Security benefits. The residents receive rental supplements from the Department of Housing and Urban Development (HUD) in accordance with a rent schedule established by HUD.[7]

GDL claims exemption pursuant to Article VIII, Section 2 of the Constitution of the Commonwealth of Pennsylvania[8] and Section 204(a)(3) of the General County Assessment Law (Law), Act of May 22, 1933,

[5] The Gloria Dei Lutheran Church sponsors the G.D.L. Manor Corporation (Manor Corp.) as well as GDL. The Manor Corp. is a non-profit corporation organized for charitable purposes, and it owns and operates an apartment complex for the elderly. The Manor Corp. loaned GDL the $97,125 to pay the tax here in dispute.

[6] The rent manager is provided an apartment and is compensated for his services.

[7] Rent is determined on twenty-five percent (25%) of the residents' actual income. HUD subsidizes the difference between the rental rate established for the apartment and what the tenant is obligated to pay.

[8] The Constitution provides that "[t]he General Assembly may by law exempt from taxation:

. . . .

Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purpose of the institution."

P.L. 853, *as amended,* 72 P.S. §5020-204(a)(3), which provides in pertinent part:

. . :(a)  The following property shall be exempt from all county, borough, town, township, road, poor, and school tax, to wit:

. . . .

(3)  All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increases of grounds and buildings thereof, and for no other purpose.

Liability for taxation is the rule and statutory provisions which exempt property from taxation are subject to strict construction. *See General Mennonite Appeal,* 72 Pa. Commonwealth Ct. 96, 455 A.2d 1274 (1983). The taxpayer has the burden of bringing itself within the ambit of the exemption. *In Re: Appeal of Doctor's Hospital,* 51 Pa. Commonwealth Ct. 31, 414 A.2d 134 (1980). The fact that an organization is a non-profit corporation does not mandate that it should be exempt from taxation. *Pittsburgh Institute of Aeronautics Tax Exemption Case,* 435 Pa. 618, 258 A.2d 850 (1969).[9]

---

[9] The fact that the IRS has ruled that an organization is a non-profit corporation and is exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. §501 (c)(3), is not controlling on whether the entity is exempt from real estate taxation under Pennsylvania law. *Pittsburgh Institute of Aeronautics Tax Exemption Case,* 435 Pa. at 627, 258 A.2d at 854.

Case law has established a three-pronged test to be applied when a claim is made for tax exemption: "[T]o obtain the claimed exemption from taxation, [the taxpayer] must affirmatively show that the entire institution, (1) is one of "purely public charity"; (2) was founded by public or private charity; (3) is maintained by public or private charity." *Woods School Tax Exemption Case,* 406 Pa. 579, 584, 178 A.2d 600, 602 (1962). The question of whether the taxpayer is a "purely public charity" is a mixed question of law and fact. *In Re: Appeal of Doctor's Hospital.* Absent an abuse of discretion or a lack of supporting evidence, the decision of the trial judge considering the question of the entitlement to a tax exemption as a purely public charity will not be disturbed by this Court on appeal. *Appeal of Bucks County Board of Assessment Appeals,* 55 Pa. Commonwealth Ct. 195, 423 A.2d 760 (1980).

We are aided in our determination by the recent Supreme Court decision of *Hospital Utilization Project v. Commonwealth of Pennsylvania,* Pa. , 487 A.2d 1306 (1985), wherein the Court stated that in order for an entity to qualify as a purely public charity, it must possess the following characteristics:

(a) advances a charitable purpose;

(b) donates or renders gratuitously a substantial portion of its services;

(c) benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) relieves the government of some of its burden; and

(e) operates entirely free from private profit motive.

*Id.* at , 487 A.2d at 1317. It is the School District's position that GDL is not a "purely public charity" as that term has been defined under Pennsylvania law.

The School District does not dispute that GDL advances a charitable purpose. A "charitable" purpose has been broadly defined to include:

> [E]very gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public.' Taylor v. Hoag, 273 Pa. 194, 196, 116 A. 826 [, 826 (1922)].

*Hill School Tax Exemption Case,* 370 Pa. 21, 25, 87 A. 2d 259, 262 (1952), quoting *Funk Estate,* 353 Pa. 321, 323, 45 A.2d 67, 69 (1946). In *Four Freedoms House of Philadelphia v. Philadelphia,* 443 Pa. 215, 219, 279 A.2d 155, 157 (1971), the Supreme Court stated that "there can be no doubt that providing low-cost housing for elderly persons with limited incomes constitutes a public charity." (relying upon *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968)).

GDL's beneficiaries—the elderly and handicapped —are legitimate objects of charity. *See Presbyterian Homes; Vanguard School Tax Exemption Case,* 430 Pa. 378, 243 A.2d 323 (1968). We are also satisfied GDL has demonstrated that it operates free from private profit motives: its officers and directors receive no salary; GDL has not profited from operating the project;[10] and all excess revenues are specifically designated to inure to the benefit of the GDL project.

The GDL project differs from the retirement home granted an exemption in *Presbyterian Homes* in that

---

[10] GDL, incorporated in 1978, had received no revenue until December, 1981, when it received approximately $10,800 in rent payment. Rents cover one hundred percent (100%) of GDL's operating costs.

GDL provides no services to its tenants aside from transportation. In both *Presbyterian Homes* and *Vanguard*, the underlying reason for finding each entity to be a purely public charity was that the institution supplied *essential care* which its beneficiaries could not provide for themselves. *See Metropolitan Pittsburgh Non-Profit Housing Corp. v. Board of Property Assessment,* 480 Pa. 622, 391 A.2d 1059 (1978). We do not believe that by providing this limited service to its tenants that GDL is furnishing *essential care* to the residents. We also note that GDL does not provide for residents when they are unable to care for themselves, rather, GDL "helps" to place these residents in a nursing home. The rationale for the exemption for the non-profit housing for the elderly in *Presbyterian Homes* and *Four Freedoms House* is therefore inapplicable to the case at bar. The residents receive transportation to doctors' appointments, hospitals and the like, but this certainly falls short of fulfilling the requirement of "donating or rendering gratuitously a substantial portion of its services."

*Hospital Utilization Project* requires that the entity relieve the government of some of its burden. This requirement stems from *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 187 A. 204 (1936), wherein the Supreme Court explained that:

Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When an inhabitant fails to contribute his share of the costs of this protection, some other inhabitant must contribute more than his

fair share of that cost. . . . Any institution which by its charitable activities relieves government of part of this burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide. . . . The measure of an institution's gratuitous aid to those requiring it is the measure by which the government is relieved of its responsibilities.

*Id.* at 413-14, 187 A. at 210. We do not believe that GDL has demonstrated that it relieves the government of any burdens: the government, through HUD, subsidizes the elderly and handicapped residents who live in the GDL project; GDL does not subsidize or in any other manner support its residents. On these facts, we cannot conclude that GDL is relieving the government of any of its burdens. *Young Men's Christian Association.*

All of the above factors, when considered together, do not support the finding of the trial court that GDL is a purely public charity entitled to exemption from taxation.[11] While the project does possess some charitable characteristics, we do not believe that the GDL housing project fully meets the strict requirements for a tax exemption.

Accordingly, we reverse the order of the Court of Common Pleas of Bucks County.[12]

---

[11] Because of our disposition on this issue, we need not address whether GDL satisfies the remainder of the three-prong test. *Woods School Tax Exemption Case.*

[12] The trial court ordered the School District to return the tax paid under protest together with all interest earned therein to GDL. In view of our determination that GDL is not an institution of purely public charity, we need not address the School District's remaining issues.

## ORDER

The order of the Court of Common Pleas of Bucks County, dated February 28, 1984, at No. 81-7169-14-5, is reversed.

Judge BARRY did not participate in the decision in this case.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent. It seems to me that the majority opinion applies too narrow a standard in determining that this institution is not a "purely public charity." It is difficult at times to draw the line in determining what purposes are of social interest to the community, particularly since there are no fixed standards. However, because of the greater concern *today* for the aged, "public charity" should be given a more liberal interpretation. The thought expressed by the supreme court in the *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 152, 236 A.2d 776, 780 (1968), quoting from *Fifield Manor Pasadena v. County of Los Angeles,* 188 Cal. App. 2d 1, 11, 10 Cal. Rptr. 242 (1961), should be given great weight in considering the totality of the circumstances which make up a purely public charity. "Man, especially the old, does not live by bread alone; that though he be able to pay for all material wants he nevertheless may be dependent upon his fellow man to protect him from the haunting fear of . . . illness or other physical disability overtaking him with no one near to help, fear of the loneliness arising from the absence of social contacts, fear of any of the tragedies of old age where there is no one standing by to help." .

The majority indicates that G.D.L. has demonstrated that it has met all the indicia of a "purely public charity" except that the resident must be trans-

ported elsewhere to obtain "essential care." But this factor of transportation should be considered with all the other factors, including the value of social contacts, and the nearness to others who can allay the fear of loneliness and who can aid in their transportation where necessary, as part of the "essential care" criteria. Considering the totality of the circumstances, G.D.L. has met the standard of a purely public charity.