**In re RHA PENNSYLVANIA NURSING HOMES HEALTH & REHABILITATION RESIDENCE from the Decision of the Board of Assessment Appeals of the County of Delaware in Connection with Premises located at 815 Chester Pike, Prospect Park Borough (Folio No. 33–00–00185–00) Delaware County, Pennsylvania, relating to the Real Estate Tax Assessment for 1998.**

**Interboro School District, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1999.
Decided March 14, 2000.

Thomas L. Kelly, Media, for appellant.

Robert E.J. Curran, Media, for appellee.

Before SMITH, J., FRIEDMAN, J. and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Interboro School District (Interboro) appeals from an order of the Delaware County Court of Common Pleas that granted the tax assessment appeal of RHA/Pennsylvania Nursing Homes, Inc. (RHA). Interboro requests that this Court decide whether the trial court committed reversible error by relying upon financial information which was not part of the record before the trial court; whether the trial court committed reversible error by relying upon financial information submitted by RHA which combined the revenues and expenses of the property under appeal with that of another property located in another county; and whether the trial court committed reversible error by finding that RHA meets the necessary criteria to be an institution of purely public charity exempt from the payment of real estate taxes.

RHA is an affiliate of Resource Health Care of America, Inc. (RHA/America). It owns and operates two nursing homes in Pennsylvania: one is located in the Borough of Prospect Park, Delaware County (Prospect Park home), and the other is located in West Chester, Chester County

(West Chester home). The nursing homes have been operating at a loss since RHA purchased them. On November 25, 1997, RHA filed a timely appeal to the trial court from the Delaware County Board of Assessment Appeal's denial of RHA's request that the Prospect Park home be declared exempt from real estate taxes as an institution of purely public charity. Interboro intervened in the tax assessment appeal because it is a Delaware County public school district with the authority to levy and collect taxes in the area in which the Prospect Park home is located.

The parties agreed at the outset of the hearing that RHA advances a charitable purpose, benefits a substantial and indefinite class of persons who are legitimate subjects of charity and relieves the government of some of its burden. The only issues posed for the trial court were whether RHA operates completely free from private profit motive and whether RHA donates or gratuitously renders a substantial portion of its services. The parties also stipulated to the admission of a packet of exhibits including among other things RHA's articles of incorporation, an open admissions policy and several documents containing RHA's financial statements for years ending June 1993 through June 1998. The financial information included information from both the Prospect Park home and the West Chester home.

■ RHA presented the testimony of John West, its chief financial officer and vice-president. Interboro presented the testimony of Mark Simmons, a certified public accountant. Both witnesses relied on stipulated exhibits and drew conclusions about whether RHA was exempt from the real estate tax based on aggregated data from both the Prospect Park home and the West Chester home. Mr. West explained that RHA does not keep separate financial records. Following the hearing, RHA sub-

mitted proposed factual findings which included an attachment that summarized financial data presented in the exhibits. The trial court accepted and adopted the "statistical analysis" in the attachment and concluded that RHA donates or gratuitously renders a substantial portion of its goods or services and operates entirely free from a private profit motive. Further, RHA suffered over $1 million per year in losses from 1994 through 1998.[1]

Section 204 of the General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–204, iterates certain property that is exempt from all county, city, borough, town, township, road, poor and school tax. The Section includes an exemption for property owned by charities and used for charitable purposes. 72 P.S. § 5020–204(a)(3), 5020–204(a)(10). Article VIII, Section 2 of the Pennsylvania Constitution, however, limits this exemption to only those organizations which are institutions of purely public charity. *Hospital Utilization Project v. Commonwealth of Pennsylvania,* 507 Pa. 1, 487 A.2d 1306 (1985).

In *Hospital Utilization Project,* the Pennsylvania Supreme Court set forth the characteristics that an entity must possess to be considered a purely public charity for purposes of Article VIII, Section 2. The Legislature codified this test and added several additional objective standards in the act commonly known as the Institutions of Purely Public Charity Act (Act), Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371–385. *See The Betsy King LPGA Classic v. Township of Richmond,* 739 A.2d 612 (Pa.Cmwlth.1999). To qualify as an institution of purely public charity, an entity must (1) advance a charitable purpose; (2) operate entirely free from private profit motive; (3) donate or render gratuitously a substantial portion of its services; (4) benefit a substantial and in-

1. The Court's review of this matter is limited to determining whether the trial court abused its discretion, committed an error of law or made findings unsupported by substantial evidence. *Mack Trucks, Inc. v. Lehigh County Board of Assessment Appeals,* 692 A.2d 661 (Pa.Cmwlth.1997).

definite class of persons who are legitimate subjects of charity; and (5) relieve the government of some of its burden. Section 5 of the Act, 10 P.S. § 375. The parties stipulated at the commencement of the hearing before the trial court that RHA's satisfaction of the second and third criteria of this test are the only issues in this case.

■ Interboro first contends that the trial court erred by accepting and adopting the attachment to RHA's post-trial memorandum. Interboro argues that the trial court committed reversible error by basing its decision on facts which were not part of the evidentiary record before it. RHA responds that the attachment was not composed of non-record facts but was merely a method of argumentation. All of the factual data contained in the attachment can be found in the exhibits that were admitted in the trial court by stipulation. The statistical analysis which the trial court adopted is merely composed of the basic mathematical calculation of percentages from that data which are necessary to apply the Act. Thus there is no fact in the attachment which was not part of the evidentiary record, and the trial court committed no error in relying upon it.

■ Interboro next contends that the trial court erred in basing its decision on financial information which combined the revenues and expenses of the Prospect Park home and the West Chester home. This Court has held that, for purposes of determining whether a parcel is exempt under Section 204(a)(3) of the Law, "it is the charitable activity which occurs on that parcel, and only that parcel, which is relevant." *Appeal of Northwestern Corp.*, 665 A.2d 856, 858 (Pa.Cmwlth.1995). However, Interboro never raised this issue before the trial court. In fact, Interboro did not object to admission of the combined finan-

cial information, and it also relied upon the information when it presented its case. Pa. R.A.P. 302(a) provides: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *See also Gateway Rehabilitation Center, Inc. v. Board of Commissioners of County of Beaver*, 710 A.2d 1239 (Pa. Cmwlth.1998). Accordingly, this issue is waived.[2]

■ Interboro also contends that the trial court erred in determining that RHA meets the criteria for an institution of purely public charity. The determination of whether an institution is one of purely public charity is a mixed question of fact and law, and the trial court's decision is binding absent an abuse of discretion or a lack of supporting evidence. *Gateway Rehabilitation Center*. Interboro argues that the trial court erred as a matter of law and committed an abuse of discretion in determining that RHA operates entirely free of private profit motive.

■ To establish that it operates entirely free from private profit motive, an institution must meet all of a four-part test set forth in Section 5(c) of the Act. Interboro acknowledges that RHA meets the first three parts of this test. *See also Unionville–Chadds Ford School District v. Chester County Board of Assessment Appeals*, 552 Pa. 212, 714 A.2d 397 (1998) (explaining that an institution operated entirely free from a private profit motive where it operated at a substantial loss for many years). Interboro contends only that RHA's articles of incorporation do not satisfy the fourth prong of the test and that the trial court erred in relying solely upon RHA's federal tax exempt status under Section 501(c)(3) of the Internal Revenue Code of 1986, 26 U.S.C. § 501(c)(3). The fourth prong requires:

(4) The governing body of the institution of purely public charity has adopted

2. It is noteworthy that Section 3 of the Act defines "institution" as "[a] domestic or foreign nonprofit corporation, association or trust or other similar entity." 10 P.S. § 373. *Compare In re Tax Assessment of Real Estate*

*of Greater Erie Economic Development Corp.*, 61 Pa.Cmwlth. 144, 433 A.2d 568 (1981) (explaining that for purposes of Section 204(a)(3) of the Law the word "institution" refers to the building devoted to charitable use).

as part of its articles of incorporation or, if unincorporated, other governing legal documents a provision that expressly prohibits the use of any surplus funds for private inurement to any person in the event of a sale or dissolution of the institution of purely public charity.

10 P.S. § 375(c)(4).

RHA argues that Articles IV and VIII of its articles of incorporation together satisfy the above requirement. Article IV(a) provides: "No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, any member, director, officer, or trustee of the corporation, or any private person...." Article VIII provides:

> Upon dissolution of the corporation, the Board of Directors shall, after paying or making provision for payment of all of the liabilities of the corporation, dispose of all of the assets of the corporation by distributing those assets to RHA/Home Office, Inc., provided that that corporation is at that time an organization described in [Section 501(c)(3).] Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction for the county in which the principal office of the corporation is located, exclusively for such purposes or to such organization or organizations as said court shall determine, which are organized and operated exclusively for such purposes.

Among other requirements, an organization cannot satisfy the description found in Section 501(c)(3) if any part of its net earnings inures to the benefit of any private shareholder or individual. Thus the articles provide that upon RHA's dissolution, its assets will be distributed to a corporation which cannot use any of its earnings to benefit a private individual or its assets will be distributed by a court of competent jurisdiction exclusively for RHA's charitable purposes.

■ The Court concludes that Articles IV and VIII together prevent the use of any surplus funds for private inurement to any person. Nevertheless, Interboro argues that RHA fails to meet the requirements of Section 5(c)(4) of the Act because RHA's articles of incorporation do not contain the exact language used in the Act. However, the Court cannot conclude that the General Assembly intended Section 5(c)(4) to require institutions of purely public charity to add the specific words of the Act to the institution's articles of incorporation. Rather, it is sufficient if the institution's articles of incorporation contain provisions that have the effect of the prohibition described in Section 5(c)(4). The trial court did not abuse its discretion in concluding that RHA meets this requirement.

■ Lastly, Interboro contends that the trial court abused its discretion in determining that RHA donates or gratuitously renders a substantial portion of its services. The Act provides seven methods by which an institution may satisfy this criterion, and the trial court concluded that RHA satisfied four of those methods. However, RHA need only prove that it satisfies one of them to establish that it donates or gratuitously renders a substantial portion of its services. One of the methods which the trial court found that RHA satisfied is located in Section 5(d)(1)(iv) of the Act. To satisfy this method the institution must provide:

> Financial assistance or uncompensated goods and services to at least 20% of those receiving similar goods or services from the institution if at least 10% of the individuals receiving goods or services from the institution either paid no fees or fees which were 90% or less of the cost of the goods or services provided to them, after consideration of any financial assistance provided to them by the institution.

10 P.S. § 375(d)(1)(iv).

■ The trial court found that the Prospect Park home has 77.2 percent of its patients on medical assistance and that medical assistance pays less than 90 percent of the full cost of the goods and services provided by RHA. The financial

exhibits in the record support this finding. Because 77.2 percent of RHA's patients are on medical assistance and medical assistance pays less than the full cost of the goods and services provided by RHA, it follows that 77.2 percent of RHA's patients are receiving uncompensated goods or services. *See* 10 P.S. § 375(d)(4) (defining uncompensated goods or services). Because medical assistance pays less than 90 percent of the full cost of the goods and services, it follows that the entire 77.2 percent of the patients on medical assistance are paying less than 90 percent of the cost of the goods or services provided to them. RHA satisfies the requirements of Section 5(d)(1)(iv) and therefore donates or gratuitously renders a substantial portion of its services. The Court need not determine whether RHA meets any of the remaining methods. The trial court's order is affirmed.

## *O R D E R*

AND NOW, this 14th day of March, 2000, the order of the Delaware County Court of Common Pleas is hereby affirmed.