In Re: Petition to Set Aside Upset : 
Tax Sale : 
                                      : 
                                      :   No. 1426 C.D. 2018
Appeal of: Craig Hansford :   Argued: September 9, 2019

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ROBERT SIMPSON, Senior Judge

OPINION BY
JUDGE COVEY                            FILED: October 1, 2019

Craig Hansford (Hansford) appeals from the Lehigh County Common Pleas Court's (trial court) September 17, 2018 order denying Hansford's Amended Petition to Set Aside Upset Tax Sale (Petition).[1] Essentially, the issue before this Court is whether Hansford was an owner occupant of 41 East Wyoming Street, Allentown, Pennsylvania 18103 (Property) at the time of the upset tax sale.[2]

The facts are undisputed.[3] Hansford has owned the Property "[s]ince 2007, 2008."[4] Reproduced Record (R.R.) at 43a. Hansford was arrested on or about May 22, 2017 and has been incarcerated thereafter. *See* R.R. at 43a-44a. On September 20, 2017, a tax sale ensued as a result of delinquent taxes. Hyoungjoon

---

[1] On October 9, 2018, the trial court amended its order to include reference to its amended opinion.

[2] In his Statement of the Questions Involved, Hansford presents two issues: (1) whether the Lehigh County Tax Claim Bureau met its burden of proving notice; and (2) whether the trial court abused its discretion by denying his Petition. *See* Hansford Br. at 4. Because determining whether Hansford was an owner occupant of the Property resolves both issues, the Court will address that issue herein.

[3] The facts are limited because the record is scant. However, as the issue before the Court is a mixed question of fact and law, and the relevant facts are undisputed, the limited facts are sufficient for this Court's review.

[4] According to the pleadings, Hansford and his mother Dorothy E. Hansford owned the Property together with a right of survivorship. It is undisputed that Dorothy E. Hansford died in 2014.

Park (Park) purchased the Property at the tax sale for $60,000.00. *See* Original Record, Hansford Memorandum in Support of Petition, Ex. A (Lehigh County Property Tax Notes). On December 22, 2017, Hansford filed the Petition alleging that he is an owner occupant of the Property, thus the Lehigh County Tax Claim Bureau (Bureau) was required to personally serve him notice of the sale.[5] On March 16, 2018, Park filed a Petition to Intervene. By March 20, 2018 order, the trial court granted Park's Petition to Intervene. The trial court held a hearing on July 9, 2018, and heard argument on July 17, 2018. On September 17, 2018, the trial court denied the Petition. On September 18, 2018, the trial court filed its opinion. On October 9, 2018, the trial court filed an amended opinion and an amended order incorporating the amended opinion. Hansford appealed to this Court on October 24, 2018.[6]

Hansford first argues that the Bureau failed to present evidence establishing its compliance with Sections 601(a)(3) and 602 of the Real Estate Tax Sale Law (RETSL).[7] The Bureau rejoins that Section 602 of the RETSL is not an issue before this Court because it was not raised before the trial court; and Section 601(a)(3) of the RETSL does not apply because Hansford was not an owner occupant at the time of the sale.[8]

Initially, with respect to the issues before this Court, the following transpired before the trial court:

---

[5] Hansford also filed his original Petition to Set Aside Upset Tax Sale on December 22, 2017. *See* R.R. at 1a.

[6] "'This [C]ourt's review of a trial court's order in a tax sale matter is limited to determining whether the trial court erred as a matter of law, rendered a decision that is unsupported by the evidence, or abused its discretion.' *City of Phila. v. Auguste*, 138 A.3d 697, 700 (Pa. Cmwlth. 2016)." *City of Phila. v. Rivera*, 171 A.3d 1, 4 n.7 (Pa. Cmwlth. 2017). "Statutory interpretation is a question of law over which our standard of review is *de novo,* and our scope of review plenary." *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, 162 A.3d 384, 389 (Pa. 2017).

[7] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.601(a)(3) (personal service required 10 days before sale of owner-occupied property), 5860.602 (notice by publication and certified mail required 30 days before sale).

[8] Park's brief contains the same arguments as the Bureau's brief.

THE COURT: . . . .

We have two issues as defined by [Hansford's a]ttorney [Glennis] Clark[,] and Attorney[] [Diane] Dinstel [representing Northeast Revenue Service, LLC, the agent for the Bureau] and [Attorney Kathryn] Williams [representing Park] agree are [sic] fair issues to deal with in a case like this.

1. Whether [] Hansford is an owner occupant as defined under Section 102 of the [RETSL[9]] as to the [P]roperty at issue; correct?

MS. WILLIAMS: Yes.

MR. CLARK: Yes.

MS. DINSTEL: Yes, Your Honor.

THE COURT: 2. Whether the [RETSL] requires personal service on an owner who is not an owner occupant as defined by said statute; correct?

MS. DINSTEL: Yes, Your Honor.

THE COURT: That makes sense.  Yes?

MR. CLARK: Yes.

THE COURT: Yes?

MS. DINSTEL: Yes, Your Honor.

THE COURT: Okay.

MS. WILLIAMS: Yes.

THE COURT: So the first is a factual question and the second is a legal question.

MR. CLARK: Yes.

THE COURT: Okay.  And so we've got the issues now.

R.R. at 17a-18a.

---

[9] 72 P.S. § 5860.102 (Definitions).

The law is well-established that

> [w]hile a party has a duty to preserve an issue at every stage of a proceeding, he or she also must comply with the general rule to raise an issue at the earliest opportunity. *Renna v. Dep't of Transp., Bureau of Driver Licensing*, 762 A.2d 785, 788 (Pa. Cmwlth. 2000) (holding failure to raise issue during trial court's hearing constituted waiver).
>
> *Campbell v. Dep't of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 349 (Pa. Cmwlth. 2014) (emphasis added)[.]

*City of Phila. v. Rivera*, 171 A.3d 1, 6 (Pa. Cmwlth. 2017) (emphasis omitted). Further, "[Pennsylvania Rule of Appellate Procedure] 302(a) provides: 'Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.'" *In re RHA Pa. Nursing Homes Health & Rehab. Residence*, 747 A.2d 1257, 1260 (Pa. Cmwlth. 2000). Accordingly, because Hansford did not raise the issue of whether the Bureau complied with Section 602 of the RETSL before the trial court, "this issue is waived." *RHA Pa. Nursing Homes*, 747 A.2d at 1260.

Section 601(a)(3) of the RETSL provides:

> **No owner-occupied property may be sold unless the [B]ureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service** by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. . . . If such personal notice cannot be served within twenty-five (25) days of the request by the [B]ureau to make such personal service, the [B]ureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

72 P.S. § 5860.601(a)(3) (emphasis added). Section 102 of the RETSL defines "Owner Occupant" as "the owner of a property which has improvements constructed

4

thereon and for which the annual tax bill is mailed to an owner residing at the same address as that of the property." 72 P.S. § 5860.102.

Hansford contends that he resides at the Property notwithstanding he is presently incarcerated, thus, he is an owner occupant. The Bureau asserts that because, according to the Bureau's tax records, the tax bills are mailed to another address, Hansford is not an owner occupant by definition. Whether an owner who normally resides at the property but is currently incarcerated, is an owner occupant for purposes of Section 601(a)(3) of the RETSL appears to be an issue of first impression. This Court will address the Bureau's argument first.

According to the Bureau's Statement of Account, the Property's tax bill is mailed to: "1000 POSTAL RD UNIT 90242 Allentown PA 18109-4311[.]" R.R. at 53a. Based on this document alone, the Bureau asserts that because "the annual tax bill is [not] mailed to . . . the same address as that of the [P]roperty," 72 P.S. § 5860.102, Hansford cannot be an owner occupant. *See* Bureau Br. at 4-5. Specifically, the Bureau argues: "Based upon the records available to the Bureau, **it could not have known** the [Property] was owner[]occupied and had no duty to comply with [Section] []601(a)(3) [of the RETSL]." Bureau Br. at 5 (emphasis added). However, because the issue before the trial court was limited to Section 601(a)(3) of the RETSL, the record is devoid of what notices were sent to Hansford pursuant to Section 602 of the RETSL and whether they were returned. Hence, it is disingenuous for the Bureau to refer to its knowledge without divulging information directly relevant thereto.

Notwithstanding, this Court has explained:

Section 601(a)(3) [of the RETSL] demonstrates the General Assembly's 'heightened concern for owner occupants being divested of the very property in which they are residing.' *Matter of Tax Sales by Tax Claim Bureau of Dauphin C[ty.]*, 651 A.2d 1157, 1159 (Pa. Cmwlth. 1994). We have

5

said that, '[b]y enacting [S]ection 601[(a)(3)] [of the RETSL], the [General Assembly] expressed a desire to provide a qualitatively different type of notice to an owner occupant and afford such owner with increased protection by way of additional notice.' *McKelvey v. Westmoreland C[ty.] Tax Claim Bureau*, 983 A.2d 1271, 1274 (Pa. Cmwlth. 2009).

*Famageltto v. Cty. of Erie Tax Claim Bureau*, 133 A.3d 337, 346-47 (Pa. Cmwlth. 2016). Because the General Assembly's reason for mandating personal service is concern over the divesting of the property wherein owner occupants reside, without the owner occupants first receiving notice, this Court cannot hold that Hansford is not an owner occupant based solely on the Bureau's lack of knowledge.

The Bureau further argues:

[Hansford] at the time of the hearing did not provide any evidence to establish the address of record with the Assessor's Office of Lehigh County [(Assessor's Office)] for mailing purposes was not provided to the Assessor's Office by [Hansford]. [Hansford] did not offer any evidence to suggest that any attempts were made to notify the Bureau, the tax collector of the Lehigh County Assessor's Office that the mailing address for the tax bills was incorrect.[10]

Bureau Br. at 5.

However,

[i]n reviewing the validity of a tax sale, the court must focus 'not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the [Bureau] comply with the requirements of the [statute].' [*In re Consol. Reports & Return by Tax Claims Bureau of Northumberland Cty. of Props*.], 132 A.3d [637,] 644 [(Pa. Cmwlth. 2016)] (quoting *Smith* [*v. Tax Claim Bureau of Pike Cty*.], 834 A.2d [1247,] 1251 [(Pa. Cmwlth. 2003)]). It

---

[10] Hansford co-owned the Property with his mother until she passed away. The record does not disclose whether Hansford or his mother provided the address of record to the Assessor's Office. Nor does the record disclose whether Hansford knew the mailing address for the tax bills was incorrect.

6

is the conduct of the [Bureau] that is determinative of compliance with the statutory notice provisions.[11]

*Clemmer v. Fayette Cty. Tax Claim Bureau*, 176 A.3d 417, 422 (Pa. Cmwlth. 2017).

Interestingly, the Bureau asserts:

The record established that prior to the [s]ale, [Hansford] resided at the [Property] for nine or ten years. During this nine[-] or ten[-]year time period, the tax bills for the [Property] were mailed to 1000 Postal Road, Unit 9024-42, Allentown, PA 18109-4311, which as previously stated is not the physical address of the [Property]. The taxes for the [Property] were paid up until 2015, **which means for seven or eight years, the tax bills were reaching the 'Owner' of the** [**Property**] **without any issues**.

Bureau Br. at 5 (emphasis added). The Bureau's assertion is not persuasive given that Hansford and his mother co-owned the Property until Hansford's mother died in 2014 and the delinquency began in 2015. Rather, it shows that Hansford, the "Owner," may not have received the tax bills, but that Hansford's mother received and paid them. Hence, the delinquency began after she passed away.

In light of *Famageltto*, this Court concludes that the Bureau is misconstruing the definition of owner occupant by focusing on the "address . . . of the property," rather than the requirement that the tax bill be mailed to "an owner residing at . . . the property." 72 P.S. § 5860.102. Recognizing the General Assembly's concern that owner occupants not be displaced, this Court cannot determine whether Hansford is an owner occupant based solely on the address listed on the Bureau's records in this case.

---

[11] Notwithstanding, Hansford's attorney did in fact question the Bureau's Agent Kimberly Ciavarella regarding whether she was aware that the address listed on the Bureau's tax records is not a residence but, rather, a post office box; thus, attempting to demonstrate that the tax bill was not mailed to another "property." *See* R.R. at 38a.

Moreover, taking the Bureau's argument to its logical conclusion, if the records inadvertently listed the wrong address, and it was undisputed that an owner resided at the property being sold, the owner would not be entitled to personal service merely because of the Bureau's incorrect records. That result is contrary to the General Assembly's intent and the well-established law that the purpose of the RETSL is not penal, but to obtain payment. The "'tax sale laws were enacted with the primary purpose of insuring the collection of taxes, and not to strip away citizens' property rights.' *Tracy v.* [*Cty.*] *of Chester, Tax Claim Bureau*, . . . 489 A.2d 1334 ([Pa.] 1985); *Stanford-Gale v. Tax Claim Bureau of Susquehanna* [*Cty.*], 816 A.2d 1214, 1216 (Pa. Cmwlth. [2003]) . . . ." *Rivera v. Carbon Cty. Tax Claim Bureau*, 857 A.2d 208, 214 (Pa. Cmwlth. 2004). The RETSL simply gives taxing districts the opportunity to collect delinquent taxes. *Id.* Because the General Assembly believed it to be of utmost importance to give owner occupants greater protection than non-owner occupants, it included Section 601(a)(3) of the RETSL to protect them from losing the properties wherein they reside. For the aforementioned reasons, this Court rejects the Bureau's argument.

Hansford contends that his incarceration at the time of the Property's sale does not negate that he was at all times an owner occupant of the Property. The trial court ruled, based on Black's Law Dictionary's definition of residence, that because "the evidence demonstrates and it is not disputed that [Hansford's] bodily presence during the relevant time period was as an inhabitant in prison . . . during the relevant time period, [Hansford] resided in prison, and not at the [] Property." Trial Ct. Amended Op. at 3; *see also* Black's Law Dictionary 1502 (10th ed. 2014). The Bureau similarly argues that because Hansford "was not physically present at the [Property] after May of 2017," he was not an owner occupant.[12] *See* Bureau Br. at 7.

---

[12] The Bureau cites *Hawkins v. Pennsylvania Housing Finance Agency* (Agency), 595 A.2d 712 (Pa. Cmwlth. 1991), to support its position. In *Hawkins*, this Court ruled that the Agency's

8

Following the above-stated rationale, under the RETSL, if a property owner was hospitalized during the relevant time period, his home would not be considered owner-occupied if an upset tax sale occurred during his hospitalization because he would not be "physically present at the [property]," Bureau Br. at 7, but rather he would be "an inhabitant in [the hospital] . . . during the relevant time period . . . not at the property." Trial Ct. Amended Op. at 3; *see also* Black's Law Dictionary 1502 (10th ed. 2014). In ascertaining the General Assembly's intent in enacting a statute, it is presumed "[t]hat the General Assembly does not intend a result that is absurd[.]" Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1). Interpreting the RETSL in a manner that would permit a property owner who may be temporarily physically incapable of inhabiting his property to lose his property without personal service, yields an unreasonable and absurd result.

The fact that an owner may be temporarily physically incapable of inhabiting his property does not mean he is no longer an owner occupant. This statement is especially true here, where the length of Hansford's absence was approximately three months before the required personal service under Section

interpretation that a homeowner who was incarcerated for **ten years** did not occupy his dwelling for purposes of the statutory occupancy and residency requirements of Article IV-C of the Housing Finance Agency Law (Act 91), Act of December 3, 1959, P.L. 1688, *as amended*, added by Section 2 of the Act of December 23, 1983, P.L. 385, 35 P.S. §§ 1680.401c-1680.409c, 1680.412. Under Act 91, a homeowner can only apply for assistance if, in addition to proving a hardship, the property securing the mortgage is an "owner-occupied **residence**." Section 401-C(a)(2) of Act 91, 35 P.S. § 1680.401c(a)(2) (emphasis added). The *Hawkins* Court used the definition of residence as opposed to domicile because the word residence was used in the statute. Based thereon, the Court found that because the homeowner was incarcerated, he did not meet the eligibility requirements. Here, however, the undefined term is "owner-occupied **property**." 72 P.S. § 5860.601(a)(3) (emphasis added). Further, the burden is not on the taxpayer to prove that he is an owner occupant, but for the Bureau to prove that it satisfied the notice requirements under circumstances wherein the General Assembly included heightened protection for the owner occupant. Accordingly, *Hawkins* does not control here.

9

601(a)(3) of the RETSL.[13]   Consequently, this Court concludes that, although Hansford was physically incapable of inhabiting the Property at the relevant time period,[14] he is an owner occupant under the RETSL.

Moreover, under circumstances where an owner who resides at the property may not be physically present at his property during the relevant time period, if the owner cannot be personally served, "the [B]ureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown," otherwise, the Bureau is mandated to personally serve the owner occupant.  72 P.S. § 5860.601(a)(3).  The Bureau did not request waiver of personal service in the instant case.  Because Hansford is an owner occupant, the Bureau was required to personally serve him notice of the tax sale before it could sell his property.

> As this Court expounded:
>
> The plain language of [S]ection 601(a)(3) [of the RETSL] unequivocally commands that 'no owner[-]occupied property may be sold' unless the owner occupant has received personal service of notice.  The provision sets forth only one exception, an order waiving the personal service requirement for good cause shown. . . .
>
> In this case, [Hansford] was not personally served with written notice of the tax sale, and the Bureau did not obtain a waiver from this statutory requirement.  Under these circumstances, the trial court [should have] concluded that the tax sale was invalid pursuant to [S]ection 601[(a)(3)] of the [RETSL].

*McKelvey*, 983 A.2d at 1274.

---

[13] This Court notes that many retired individuals travel south for the winter.  If any of the homes wherein they reside were exposed to sheriff's sale during those winter months, pursuant to the Bureau's argument and the trial court's rationale, they would not be entitled to personal service because they were not physically present in their homes during the relevant period.  Such an interpretation leads to an absurd and unreasonable result.  *See* 1 Pa.C.S. § 1922(1).

[14] Here, Hansford is physically incapable of inhabiting his Property because the Commonwealth mandated his incarceration, not because he was residing at another property.

10

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition to Set Aside Upset :
Tax Sale :
 :
 :  No. 1426 C.D. 2018
Appeal of: Craig Hansford :

# O R D E R

   AND NOW, this 1st day of October, 2019, the Lehigh County Common Pleas Court's September 17, 2018 order is reversed.

         _____
         ANNE E. COVEY, Judge